1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11  CALIFORNIA VALLEY MIWOK TRIBE,
                                    NO. CIV. S-08-3164 FCD/EFB
12          Plaintiff,

13      v.                          MEMORANDUM AND ORDER

14  DICK KEMPTHORNE, Secretary of
    The United States Department
15  of the Interior; GEORGE
    SKIBINE, Acting Deputy
16  Assistant Secretary for Policy
    and Economic
17  Development-Indian Affairs;
    DALE RISLING, Regional
18  Director of the Bureau of
    Indian Affairs; TROY BURDICK,
19  Superintendent of the Central
    California Agency of the
20  Bureau of Indian Affairs,

21          Defendants.
    _____/
22

23                        ----oo0oo----

24      This matter is before the court on California Valley Miwok

25  Tribe's ("plaintiff" or "the Tribe") motion for preliminary

26

27

28

                                 1

injunction against defendants[1] ("defendants," "BIA" or "the government").[2]  Plaintiff contends that defendants' failure to renew its annual funding agreement ("AFA") is based upon a misreading of the applicable law, and that the denial of the AFA has caused plaintiff to "shut down tribal operations" and "threatens to preclude the Tribe from entering the Self-Governance Program," which permits the Tribe to provide certain programs and services to its members on behalf of the federal government.  (Pl.'s Mem. in Supp. of TRO and Prelim. Inj. ("Pl.'s Mem."), filed Jan. 15, 2009, at 2.)  Plaintiff requests the court sequester or disburse to it the funds allocated to the Tribe for the 2008 program year, pending resolution of this action.  (Id. at 13.)

---

[1]     The named defendants are: Dick Kempthorne, Secretary of The United States Department of the Interior; George Skibine, Acting Deputy Assistant Secretary for Policy and Economic Development--Indian Affairs; Dale Risling, Regional Director of the Bureau of Indian Affairs; and Troy Burdick, Superintendent of the Central California Agency of the Bureau of Indian Affairs.

[2]     On January 15, 2009, plaintiff filed a motion for temporary restraining order ("TRO") and preliminary injunction, setting the matter for hearing on March 6, 2009, the court's next available law and motion date (Docket #7-2).  In conjunction with the motion, plaintiff filed an ex parte application to shorten time on the motion, indicating it needed a decision on or before March 2, 2009, the alleged date by which the Tribe had to apply to be a "Self-Governance Tribe."  Considering that March 2 deadline, there was no need to hear the motion as a TRO, and accordingly, the court set the matter for hearing on plaintiff's request for a preliminary injunction for February 20, 2009, the court's next regularly set law and motion date preceding March 2. (Minute Order, filed Jan. 16, 2009.)  Thus, contrary to plaintiff's argument in its reply, the government properly responded to the motion as a motion for preliminary injunction, not a motion for TRO.  Regardless, however, the standard for a TRO is essentially the same as for a preliminary injunction, and the court's decision herein would be the same whether considering a motion for TRO or preliminary injunction.

2

1    Upon the government's denial of the Tribe's 2008 AFA, the
2    Tribe appealed the decision to the Department of the Interior,
3    Board of Indian Appeals ("the Board"), thus initiating the
4    administrative appeals process.   See Cal. Valley Miwok Tribe v.
5    Cent. Cal. Agency Superintendent, Bureau of Indian Affairs, 47
6    IBEA 91, Docket No. IBIA 08-58-A (June 10, 2008) (denying the
7    Tribe's appeal as "untimely").   Rather than exhausting its
8    administrative remedies by appealing the Board's decision to the
9    district court, pursuant to the Administrative Procedures Act
10   ("APA"), 5 U.S.C. § 706, plaintiff filed the instant action,
11   asserting direct claims against defendants based on their denial
12   of the AFA.   Under the doctrine of exhaustion of remedies, this
13   court lacks jurisdiction over this matter, and plaintiff's
14   complaint must be dismissed for that reason.

15   However, even if this court had jurisdiction over this case,
16   plaintiff would not prevail on its motion.   A recent district
17   court decision found that the Tribe lacks a recognizable
18   governing body (see Cal. Valley Miwok Tribe v. United States, 424
19   F. Supp. 2d 197, 202-03 (D.D.C. 2006) ("CVMT I")); the government
20   relied on CVMT I in rejecting the AFA.   Because having a
21   recognizable governing body is a prerequisite for the government
22   to contract with an Indian tribe, plaintiff cannot demonstrate a
23   likelihood of success on the merits of its claims sufficient to
24   obtain a preliminary injunction.

25   For the reasons set forth in more detail below, this action
26   is dismissed for plaintiff's failure to exhaust administrative
27   remedies, or, alternatively, plaintiff's motion for preliminary
28   injunction is denied on the merits as plaintiff cannot

3

demonstrate a reasonable likelihood of success on its claims.[3]

**BACKGROUND**

For the past decade, the California Miwok Tribe, a federally recognized Indian tribe (<u>Cal. Valley Miwok Tribe v. United States</u>, 515 F.3d 1262, 1265 (D.C. Cir. 2006) ("<u>CVMT II</u>") (citing 70 Fed. Reg. 71,194, 71,194 (Nov. 25, 2005))), has been mired in internal leadership disputes, bringing into question the legitimacy of the Tribe's organizational structure.  The BIA has, on several occasions, refused to recognize the Tribe's governing body.  In 2006, a district court ruled in favor of the government, finding that the government was not required to recognize the Tribe as an "organized tribe" when the purported leadership only represented a small percentage of the potential tribal membership.  <u>CVMT I</u>, 424 F. Supp. 2d at 202-03.  The following represents a chronology of relevant facts and tribal dealings leading to the 2006 litigation and the current litigation.

1.   <u>**The 2006 Litigation: The Tribe's Attempt to Obtain Approval of their Constitution**</u>

In November 1998, upon recommendation of the BIA, the Tribe established a tribal council.  <u>CVMT I</u>, 424 F. Supp. 2d at 198.  The Tribe subsequently elected Silvia Burley ("Burley") as chairperson of that council in 1999.  <u>Id.</u>  In 2000, in an attempt to become organized under federal law, Burley requested that the BIA review and approve the Tribe's newly-adopted constitution.

---

[3]    Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

4

Id. at 199; CVMT II, 515 F.3d at 1265.  The BIA failed to do so

in a timely manner and Burley subsequently withdrew her request.

CVMT I, 424 F. Supp. 2d at 199; CVMT II, 515 F.3d at 1265.  A

second effort to organize was similarly unsuccessful.  In 2001,

the Secretary of the BIA informed Burley that the Tribe's

constitution was "defective and the [T]ribe still unorganized."

CVMT II, 515 F.3d at 1265.  Forming the basis for the BIA's

position was the current leadership's failure to "attempt to

involve the entire tribe in the organizational process."  Id.

Burley, in the Tribe's name, then sued the government for

its failure to recognize the tribe as organized, seeking

declaratory and injunctive relief.  Id. at 1266.  The Tribe

alleged that the BIA had violated 25 U.S.C. section 476(h) by not

recognizing the Tribe's "government, its documents, and its

chairperson."  CVMT I, 424 F. Supp. 2d at 210.  The District

Court for the District of Columbia found in favor of the

government, holding that the BIA was not required to recognize

the Tribe's governing body and its governing documents when the

leadership did not actually represent the tribal membership.

CVMT I, 424 F. Supp. 2d at 201-03.  The court dismissed the

Tribe's action for failure to state a claim.  Id. at 203.  The

D.C. Circuit affirmed, noting that the government must work to

"promote a tribe's political integrity," which means ensuring

that the tribe's leaders represent the tribe as a whole.  CVMT

II, 515 F.3d at 1267 (citing Seminole Nation v. United States,

316 U.S. 286, 296-97 (1942) and Seminole Nation v. Norton, 223 F.

Supp. 2d 122, 140 (D.C. Cir. 2002)).  As the court articulated,

the Tribe "ha[d] a potential membership of 250, [yet] only Burley

and her small group of supporters had a hand in adopting her proposed constitution.  This antimajoritarian gambit deserves no stamp of approval from the Secretary."  Id. at 1267.

**2.   The Current Litigation: The BIA's Failure to Renew the AFA**

On September 30, 1999, the Tribe, through Burley, became a "contracting tribe" under the Indian Self-Determination and Education Assistance Act ("ISDEAA").[4]  (Pl.'s Mem. at 6.) Pursuant to a contract between the Tribe and the BIA, the Tribe was responsible for government organizational tasks, including "drafting a constitution, adopting laws to govern the Tribe, adopting and implementing tribal member enrollment criteria and interacting with the State of California and other states to protect the interests of eligible Miwok Indian children under the Indian Child Welfare Act, 25 U.S.C. section 1901 et seq." (Id. at 6-7.)

Every year from September 30, 1999 to December 31, 2007, the BIA renewed the Tribe's AFA, which provided funds to the Tribe to "operate programs, functions and activities on behalf of the Tribe." (Id. at 7.)  Colleen Petty, the Tribe's Financial Administrator/Consultant, submitted the 2008 AFA proposal and resolution to Troy Burdick ("Burdick"), Superintendent of the Central California Agency of the BIA, on October 1, 2007. (Decl. of Colleen Petty, filed Jan 15, 2009 ("Petty Decl."), at ¶ 15; Pl.'s Mem. at 7.)  In a letter dated December 14, 2007, Burdick

---

[4]    A "contracting tribe" is one that enters into a self-determination contract for planning, conducting, and administering programs and services under one of the ISDEAA's five delineated purposes.  See 25 U.S.C. § 450(a)(1)(A)-(E).

6

informed the Tribe that the AFA would not be renewed because "[t]he Department of the Interior does not recognize that the California Valley Miwok Tribe has a governing body." (Letter from Troy Burdick, Superintendent, BIA, to Silvia Burley, Dec. 14, 2007 ("BIA's rejection letter")). Burdick cited the 2006 case, CVMT I, to support the BIA's position. Id. The letter notified the Tribe that it had 30 days to file an administrative appeal to the Regional Director of the BIA. Id.[5]

The Tribe received the BIA's rejection letter on December 17, 2007 and requested an informal conference 31 days later on January 17, 2008. (Pl.'s Mem. at 7-8.) The BIA did not respond because the Tribe "missed the 30-day deadline for filing [the] request." (Defs.' Opp'n, filed Feb. 6, 2009, at 13.) Over three months later, on March 18, 2008, the Tribe appealed to the Interior Board of Indian Appeals ("the Board"). Cal. Valley Miwok Tribe v. Cent. Cal. Agency Superintendent, Bureau of Indian Affairs, 47 IBEA 91, Docket No. IBIA 08-58-A (June 10, 2008). The Board dismissed the appeal as "untimely." Id. at 98.

Plaintiff filed the instant action on December 29, 2008, asserting claims for injunctive and declaratory relief based on defendants' alleged violations of the ISDEAA and DOI regulations. (Compl. at ¶¶ 33-45; Pl.'s Mem. at 11-13.) Plaintiff now moves

---

[5]   In so providing, the letter cited the incorrect appeal procedures; 25 C.F.R. Part 2, cited in the letter, provides the default administrative appeal procedures for decisions where no other regulatory route of appeal is provided. However, when plaintiff appealed the BIA's decision in this case, it employed the correct procedures for appeals under the ISDEAA. See 25 C.F.R. § 900.150-900.176. Significantly, the 30 day deadline for filing an appeal is the same under Part 2 as it is under Section 900.150 et seq., and thus, plaintiff suffered no prejudice from the incorrect citation to the appeals process.

for a preliminary injunction, requesting that the court sequester or release the funds as proscribed in the AFA pending resolution of this action.[6]  (Pl.'s Mem. 2.)

**ANALYSIS**

### 1. Exhaustion of Administrative Remedies

In response to plaintiff's motion, defendants argue, in the first instance, that this court lacks jurisdiction because plaintiff failed to exhaust its administrative remedies.[7] (Defs.' Opp'n at 12-14.)  It is a well-recognized tenet of administrative law that "'no one is entitled to judicial relief for the supposed threatened injury until the prescribed administrative remedy has been exhausted."'  Woodford v. Ngo, 548 U.S. 81, 88-89 (2006) (citing McKart v. United States, 395 U.S. 185, 193 (1969) (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938))).  Exhaustion of remedies protects agency autonomy, promotes efficiency, and saves judicial

---

[6]    At times in its papers, plaintiff requests that the court "sequester" the subject funds in order to preserve the status quo during the pendency of this action.  However, plaintiff also requests, more clearly at other times in its papers, immediate disbursement of the 2008 funds so that the Tribe can continue to operate its contractual programs (see Reply, filed Feb. 13, 2009, at 13).  As set forth below, to obtain such mandatory injunctive relief, plaintiff must meet a higher burden.  However, the court does not reach that issue herein because for the reasons set forth below, this action is dismissed for lack of jurisdiction, and/or plaintiff cannot establish a reasonable likelihood of demonstrating a violation of law by defendants, and thus, the court need not consider whether mandatory injunctive relief is warranted in this case.

[7]    Defendants also raised the alternative argument that this court lacks jurisdiction because Burley is neither a "tribe" nor a "tribal organization" and thus cannot bring a claim under the ISDEAA.  (Defs.' Opp'n at 11-12.)  The court does not reach that issue because this case is properly dismissed for failure to exhaust administrative remedies.

8

resources.  Id. at 89.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90.  The failure to appeal from an administrative agency's decision is the classic example of a failure to exhaust administrative remedies.  See e.g., Lichter v. United States, 334 U.S. 742, 792 (1948).

Here, 25 U.S.C. section 450f(b) delineates the "[p]rocedure upon refusal of request to contract."  Specifically, tribal organizations may appeal decisions:

> under such rules and regulations as the Secretary may promulgate, except that the tribe or tribal organization may, *in lieu of* filing such appeal, exercise *the option* to initiate an action in the Federal district court and proceed *directly* to such court pursuant to section 450m-1(a) of this title.

Id. (emphasis added).  Section 450(f) thus gives plaintiffs the option to *either* file an administrative appeal under the DOI regulations *or* seek review by the district courts.  In this case, the Tribe attempted to do both.  It initially sought an informal conference in accordance with the rules and regulations of the ISDEAA.  See 25 C.F.R. § 900.154 (stating that an Indian tribe or tribal organization "shall file its request for an informal conference with the office of the person whose decision it is appealing, within 30 days of the day it receives the decision").  The Tribe filed its request 31 days after receiving the BIA's rejection letter.  (Pl.'s Mem. at 7-8.)  Due to the Tribe's untimely request, the BIA did not respond.  (Defs.' Opp'n at 13.)  The Tribe then appealed to the next level of review, the Interior

Board of Indian Appeals (the "Board").  <u>Cal. Valley Miwok Tribe</u>
<u>v. Cent. Cal. Agency Superintendent, Bureau of Indian Affairs</u>, 47
IBEA 91, Docket No. IBIA 08-58-A (June 10, 2008).  After the
Board dismissed the appeal as "untimely" (<u>id.</u> at 98), plaintiff
did not appeal the Board's decision to the next and final level
of review, the district court, pursuant to the APA.  Instead, the
Tribe filed this action on December 29, 2008, asserting direct
claims against defendants for alleged violations of the ISDEAA
and DOI regulations; the Tribe did not request review of the
Board's decision under the APA.

Under the governing statute, Section 450f(b), the Tribe
could have filed this action "*in lieu of*" filing an
administrative appeal under the DOI regulations and proceed
directly to this court, but it chose the latter and proceeded
first through the administrative channels.  The plain language of
the statute does not give plaintiff discretion to do both.  Once
it chose to proceed through the administrative process, the Tribe
had to complete that process before filing suit herein.

Plaintiff's reliance on <u>Aleutian Pribilof Islands</u>
<u>Association, Inc. v. Kempthorne</u>, 537 F. Supp. 2d 1 (D.D.C. 2008)
for the contrary proposition is unavailing.  In <u>Aleutian</u>, the BIA
declined the tribal association plaintiff's request for funds,
indicating that it would provide those funds to a regional tribal
corporation instead.  <u>Id.</u> at 5.  The plaintiff requested an
informal conference, thus instituting the administrative appeals
process.  <u>Id.</u>  After the Deputy Regional Director recommended
upholding the BIA's decision, the plaintiff appealed to the
Board, which likewise upheld the BIA's decision.  <u>Id.</u>  This is

1   where _Aleutian_ diverges from the present case.

2        In _Aleutian_, unlike here, the tribal association plaintiff
3   filed suit in district court, asserting direct claims against the
4   government under the ISDEAA but _also bringing claims pursuant to_
5   _the APA_, seeking review of the Board's decision.  _Id._ at 7-8.
6   The _Aleutian_ court did not reach the association's ISDEAA claims
7   and instead resolved the entirety of the action under the APA.
8   _Id._ at 6-7.   Thus, in _Aleutian_, the plaintiff association had
9   fully exhausted its administrative remedies by filing its
10  district court action at least in part based on the APA.

11       This court acknowledges that in _Aleutian_, the district court
12  remarked (notwithstanding the full exhaustion in that case) that
13  under the governing statute, a plaintiff is not required to
14  exhaust all administrative levels of review because the statute
15  expressly permits the filing of a direct action in district
16  court.  _Id._ at 8.   This observation is dicta, and even if it were
17  not, the court would not find _Aleutian_ persuasive authority on
18  this point.   Contrary to the _Aleutian_ court's finding, the plain
19  language of 450f(b) clearly provides that a plaintiff may
20  "_exercise the option_" of foregoing the administrative appeals
21  process and proceed "_directly_" to the district court.   This
22  choice, however, is to be made "_in lieu of_" the administrative
23  appeals process (not "in addition to" that process), thus
24  indicating that a plaintiff cannot choose to do both.   Indeed, to
25  allow both would be contrary to the interests of promoting agency
26  autonomy, judicial efficiency, and consistency of judgments.

27       Ultimately, to support its statement that exhaustion of
28  remedies is not required under the ISDEAA, the _Aleutian_ court

relied on Congress's use of the word "may" (i.e., "a tribe *may*, in lieu of filing such appeal, exercise the option to initiate an action in Federal district court . . . .") Id. at 8.  The permissive word "may," however, simply emphasizes a tribe's *choice* or "option" of avenues, it does not mean that a tribe may institute either process *at any time*.

Because the Tribe here has not sought review of the Board's decision pursuant to the APA, it has failed to exhaust its administrative remedies, and thus, this court lacks jurisdiction over this action and must dismiss plaintiff's complaint.[8]

Nevertheless, the court notes that even if plaintiff had properly exhausted its administrative remedies and this court had jurisdiction over this matter, plaintiff would not prevail on the instant motion.  Because the government had grounds to reject the Tribe's AFA on the basis of the Tribe's failure to have a recognizable "tribal organization," plaintiff cannot demonstrate it is likely to prevail on its claims in this action.

## 2. Injunctive Relief

### A. Standard

Typically, to prevail on a motion for preliminary injunction, plaintiff must show: (1) a likelihood of success on the merits, (2) that plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in plaintiff's favor, and (4) that an injunction

---

[8]   Defendants' incorrect citation to the relevant appeal procedures does not impact the court's decision.   Plaintiff concedes it employed the correct procedures when effectuating its appeal, and the 30 day deadline was the same under the default procedures cited by defendants as the applicable procedures.

is in the public interest.  <u>Winter v. Nat'l Res. Def. Council,</u>
<u>Inc.</u>, 129 S. Ct. 365, 374 (2008).  However, "[t]he[se] standard
requirements for equitable relief need not be satisfied when an
injunction is sought to prevent the violation of a federal
statute which specifically provides for injunctive relief."
<u>Trailer Train Co. v. State Board of Equalization</u>, 697 F.2d 860,
869 (9th Cir. 1983); <u>see also</u>, <u>United States v. Estate Pres.</u>
<u>Serv.</u>, 202 F.3d 1093, 1098 (9th Cir. 2000) ("The traditional
requirements for equitable relief need not be satisfied since
[the statute] expressly authorizes the issuance of an
injunction.").

        The cases defendants cite are inapposite.  <u>Hecht Co. v.</u>
<u>Bowles</u>, 321 U.S. 321 (1944) merely gives a court discretion in
granting an injunction where the statute authorizes such relief,
emphasizing the flexible nature of equitable relief.  <u>Id.</u> at 329.
The statute at issue in <u>Rondeau v. Mosinee Paper Corp.</u>, 422 U.S.
49 (1975) is distinguishable from the statute in this case, as it
did not expressly authorize injunctive relief.  <u>See</u> <u>Rondeau</u>, 422
U.S. at 323 nn. 1-4 (delineating the applicable statutory
provisions).  In fact, Justice Brennan's dissent implies that *had*
the statute expressly authorized such relief, a showing of
irreparable harm would not have been necessary.  <u>See</u> <u>Rondeau</u>, 422
U.S. at 65 (Brennan, J., dissenting) (arguing that the statute at
issue did in fact impliedly authorize injunctive relief, and
thus, irreparable harm did not need to be shown).

        Here, the statute at issue grants district courts the
authority to "order appropriate relief including money damages
[and] injunctive relief . . . (including immediate injunctive

13

relief to reverse a declination finding . . . or to compel the Secretary to award and fund an approved self-determination contract)." 25 U.S.C. § 450m-1.  Thus, the court need only consider plaintiff's likelihood of success on the merits in determining whether to grant a preliminary injunction.

Finally, where a plaintiff seeks a mandatory injunction, like plaintiff's request for immediate disbursement of the funds here, a court must apply heightened scrutiny to determine whether the facts and law favor the plaintiff.  Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993)(citing Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980)).

## B. Likelihood of Success on the Merits

In enacting the ISDEAA, Congress sought to effectuate a "strong Federal policy of self-determination" on the part of Indian tribes." 25 U.S.C. § 450a; 25 C.F.R. § 900.3.  The Secretary of the United States Department of the Interior ("DOI") is required, "upon the request of any Indian tribe by tribal resolution," to enter into a self-determination contract with federally-recognized Indian tribes, allowing the tribal organization to plan, conduct, and administer certain authorized "programs or services which are otherwise provided to Indian tribes and their members pursuant to Federal law . . . ." 25 U.S.C § 450f(a)(1); 25 U.S.C. § 450b(j).

The ISDEAA provides five specific circumstances under which the Secretary may reject proposed contracts.[9]  25 U.S.C.

---

[9] The five grounds for denying a contract under Section 450f of the ISDEAA are as follows:

(A) the service to be rendered to the Indian

14

§ 450f(2).   In doing so, the DOI must provide written notice to the applicant, clearly demonstrating that the proposed contract falls within one of the five statutory bases for denying a contract.   Id.   Echoing the strong policy in favor of such contracts, Federal regulations specifically state that the Secretary cannot "decline an Indian tribe or tribal organization's proposed successor annual funding agreement . . . if it is substantially the same as the prior annual funding agreement."  25 C.F.R. § 900.32.

    In this case, both parties concede that defendants did not provide written notice demonstrating that the Tribe's proposed AFA fell within one of the five statutory grounds for denying a contract. (Pl.'s Mem. at 12; Defs.' Opp'n at 14 n.6.; BIA's rejection letter.)   However, as defendants emphasize,

---

            beneficiaries of the particular program or function to
            be contracted will not be satisfactory;

            (B) adequate protection of trust resources is not
            assured;

            (C) the proposed project or function to be contracted
            for cannot be properly completed or maintained by the
            proposed contract;

            (D) the amount of funds proposed under the contract is
            in excess of the applicable funding level for the
            contract, as determined under section 450j-1(a) of this
            title; or

            (E)the program, function, service, or activity (or
            portion thereof) that is the subject of the proposal is
            beyond the scope of programs, functions, services, or
            activities covered under paragraph (1) because the
            proposal includes activities that cannot lawfully be
            carried out by the contractor.

25 U.S.C. § 450f(2)

> "[t]here [is] no need for [the] BIA to address the five statutory bases for declining an ISDA contract . . ., because [the Tribe] could not satisfy an even more fundamental requirement in the statute--the requirement that DOI contract with a 'tribal organization.'"

(Def.'s Opp'n at 14 n.6.)  The DOI may only enter into self-determination contracts with "tribal organizations."  See 25 U.S.C. § 450(b) (defining "self-determination contract" as "a contract . . . entered into . . . between a tribal organization and the appropriate Secretary for the planning, conduct and administration of programs or services . . . .").  The ISDEAA defines "tribal organization" as "the recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities . . . ."  25 U.S.C. § 450b(l).

Although the BIA renewed the Tribe's AFA every year between 1999 and 2007, it did so before the courts affirmed the BIA's position that the Tribe lacked a recognized governing body.  CVMT I, 424 F. Supp. 2d at 202-03.  In CVMT I, the Tribe brought an action for declaratory and injunctive relief, alleging that the government had interfered with the Tribe's internal affairs and, in refusing to adopt the Tribe's constitution, violated the Indian Reorganization Act, 25 U.S.C. section 476(h).  Id. at 197, 201.  In dismissing the Tribe's claims, the court agreed with the government's contention that the Tribe lacked a recognized governing body.  Id. at 202-03.  As the district and appellate

16

1  courts expressly stated, the government "ha[s] a duty to conduct
2  business only with lawfully-constituted governing bodies who
3  represent the tribal membership" and thus the government must
4  determine "whether a tribe has properly organized itself to
5  qualify for federal benefits" before contracting with that
6  particular tribe.  CVMT I, 424 F. Supp. 2d at 201; CVMT II, 515
7  F.3d at 1267.

8      Defendants rejected the Tribe's 2008 AFA because the Tribe
9  lacked a recognized governing body; in doing so, defendants
10 expressly relied upon the court's decision in CVMT I.   That
11 decision was affirmed by the circuit court.   CVMT II, 515 F.3d at
12 1267.  Although the ultimate issue in those cases may be
13 distinguished from the case at hand, the rationale in CVMT I and
14 II applies equally here.  Like CVMT I and II, the BIA's decision
15 here turned on whether the Tribe had a recognizable governing
16 body.   The BIA's determination that the Tribe did not was
17 affirmed by the courts in CVMT I and II.   Based on those
18 decisions, this court cannot find that plaintiff is likely to
19 succeed on the merits of its claims in this case.

20     For these reasons, the Tribe cannot establish entitlement to
21 a preliminary injunction.   Therefore, even if this court were to
22 reach the merits of plaintiff's claims, plaintiff's motion for a
23 preliminary injunction would be DENIED.

24                        **CONCLUSION**

25     Based on the foregoing, the court dismisses this action,
26 without prejudice, for lack of jurisdiction based on plaintiff's
27 failure to exhaust administrative remedies.   Alternatively, even
28 assuming arguendo that the court had jurisdiction, plaintiff has

17

not shown it is likely to succeed on the merits of its claims because the government's basis for denying the AFA has been upheld by the courts.

　　　IT IS SO ORDERED

DATED: February 23, 2009.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE